The next case on the calendar is United States v. Cabot. May I proceed? May it please the Court, I'd like to focus my arguments on the 3553A arguments, because even with the disputed abuse of trust enhancement, the guideline range was 78 to 97 months, and so at a minimum the district court upwardly varied by close to two years on an already serious sentence. There was no written statement of reasons by the district court, but I think there's no real dispute what that upward variance was based on. The first was the district court's perception that Cabot's offenses had caused a loss of greater than $17 million, and second, that Cabot was aware that his victims were vulnerable. Judge Walker's decision in United States v. Juha, which I know Judge Calabresi joined on, I think guides this case. That case, Juha held that due process requires that a district court's discretion be based on accurate facts, and that any factual determinations must be found by a preponderance of the evidence. And Judge Walker, your decision in Cosey, held that the failure to do that constitutes plain error. There was no objection here to these two findings, but it satisfies the plain error standing. The government's . . . The district court's focus was not just on the . . . was not on the amount of loss so much as the concept of loss, and that the victims in this case had spent time trying to recover their money, had experienced anxiety and emotions, and that this greater loss justified some departure upwards. That wasn't . . . You're not saying that that was erroneous in any way. Well, to the extent that the district court was . . . The government's . . . The PSR contained, not in the body of the PSR, in its recommendation, a statement that the losses here to the investor was $300 million. To the extent that those . . . There's a question, a serious question, and the record is replete with the government's concession and findings by the district court that there was no way to determine whether that $300 million was caused by Cabot or by the general financial . . . Right, but if the $300 million had taken hold, I don't know. I mean, you'd have to look at this, but 120 months would have been like . . . But that's a big if. Right, but the 17 million people were certain of, and then there was an increment above that, but an indeterminate one that could be considered as part of the 3553 analysis, along with reasonable anticipation of the vulnerability of the victims and so forth. But that additional increment, that's precisely subject to question. It's by no means clear that there was anything over this. I have two questions or problems. One is, with respect to the vulnerability of the victims, did the district court say that he knew, which was against the . . . wasn't sufficient evidence for, or did the district court say, whether he knew or not, they were vulnerable, and I am putting a higher sentence because when that happens, we want to give . . . we want to do it. That's a good idea to do in general because one is based on a wrong fact. The other one is based on what the court might do, and I'm not sure what the district court did. That's my first question. My second question goes to the amount, and that is we have held in Rutzkowski in 2207, Judd Newman wrote an opinion saying that loss causation is required under the guidelines for the amount, and I think, though this isn't under the guidelines, it still is there and important. He then says generally the burden, suggests the burden is on the government, but we have other cases in which we have suggested, again not made clear, that in a situation where loss causation is something of this sort, the burden might be on the party denying loss causation to show that it isn't there. That's a rather complicated situation. If somebody, if loss causation is due to something like an earthquake hit the house rather than another house and the misrepresentation had to do with who owned the house, then loss causation is not there unless it is shown. If the suggestion was that the house was a strong one, then the burden should be on the person who made the misrepresentation to say that the earthquake wasn't the cause, so that this might be a case where loss causation's burden should be on your party. May I respond? As to the first question, I think the record is clear to me that the district court was relying on the fact that Cabot knew these victims were vulnerable. If that were so, and it looks that way, shouldn't we go back and simply ask the district court what it did? We can, but I think now the record is very clear that there's no basis for such a conclusion. The government's just looking at the government's statements at sentencing where it said that these victims were people looking to sell their primary residence in order to take advantage of the tax breaks. 1031, that's a statute. It's very clear that's not available to such an investor. A 1031 exchange is for investment purpose, not for someone selling his primary residence. So I think between the fact that the investors were accredited, that there was a requirement that there should be accredited investors, and the nature of the investment. This comes straight from the complaint. It's a 1031 exchange. 1031 has very particular rules. The most important of it is you sell an investment property and you could roll it over now into a different investment property, nothing to do with primary residence. So as to that, maybe one solution is to send it back to the district court, but I think on remand the district court would have to conclude that Cabot didn't know. As to the second question about loss causation and whether the defendant should bear the burden, I think Your Honor is talking about a situation where the parties disagree as to who caused the loss. The government was very clear, and I could just give examples from the record, that they simply didn't know who caused the loss. So it's not a situation where... Isn't it manifested in a situation where a misrepresentation with respect to a market value of a security, and then there's a general crash, that that is a situation where we assume that this was due to what the misrepresentation was unless somebody shows us that it was the market crash that was big enough to do it, while in a situation where the two have nothing to do with each other, we assume that there wasn't loss causation unless loss causation is shown. Doesn't that make sense as a way of dealing with it? But that's not the facts in this case, because if you look at the complaints, it's very clear that the crash came first. The reason why, one of the reasons why, that Cabot resorted to the fraud is because many of the investments were failing. That's an allegation straight out of the complaint. And what he was doing was he was taking money from more profitable investments, putting it in others. So certainly this record does not support any basis to conclude that that $300 million loss, how much of that was lost even before Cabot started his fraud. And so Your Honor's assumption, I think, is just not supported by the record in this case. May it please the Court. Edward Imperatore for the government. I have represented the government in the district court and in this court on appeal. The judgment of the district court should be affirmed in all respects. The district court committed no procedural error, much less any plain error, in considering the undisputed facts that there were some victims of the offense who were vulnerable, and second, that there was some . . . Isn't the question of the defendant's knowledge important there? It's not, Your Honor. And let me begin with the vulnerable victim enhancement, which did not apply in this case. Under the vulnerable victim enhancement, which is a two-level enhancement, that enhancement would apply if there is at least one victim who the defendant knew or had reason to know was vulnerable. So, in other words, even to apply an enhancement, there's no requirement that the defendant actually know that the victim was vulnerable. So, certainly . . . Your point is that if it goes to the question of the loss, of the harm that was caused, independently of whatever the defendant might have known. That's correct, Judge Walker. This is a Section 3553A issue, and Judge Furman properly drew the inference from the undisputed facts that there were vulnerable victims here, and he also . . . Well, there were vulnerable victims, but the question is, did he decide on the ground that there were vulnerable victims, and that was reason enough to do a 3553 enhancement in his discretion, or did he decide that this defendant knew that there were vulnerable victims, even though there wasn't enough of that under the guidelines, and on that basis gave the enhancement? And my problem is that if you read what he said, it looks as though he was making an assumption as to knowledge rather than basing it on the other, and perhaps he could perfectly well do what he did on the other, but that's why I asked, should we send it back? No, Judge Calabresi, and I think we would disagree with that characterization. Please speak into the microphone. Yes, Your Honor. So on pages 104 and 105 of the record, Judge Furman said, I do think that the vulnerability of the victims here is a factor. He went on to explain that he also believed that Cabot knew, based on two inferences that were based on the undisputed facts in the record. First, the nature of the investment itself, and second, the tax benefits that would flow from it. Let me take a step back and explain that. This was a form of fixed income investment where victims expected to receive distributions from rental income on properties. Let me just ask you, are you arguing that there was enough on the record to support a finding that the defendant knew, and therefore, the judge's enhancement based on that knowledge was to be upheld, or are you arguing that the judge decided the case, regardless of knowledge, because vulnerability was clearly there, and that is basis for the enhancement? Because you seem to be going from one to the other, and I'm not sure which it is you're arguing. I apologize for the lack of clarity, Judge Calabresi. It is the latter. The judge hinged his finding on the fact of vulnerability. In any event, there were certainly undisputed facts in the record from which Judge Furman could properly conclude that the defendant knew that there were vulnerable victims. I mentioned the first factor being the nature of the investment. The second was the nature of the tax break that would flow from that. I'll just observe that the government read into the record the statement of one particular victim named Frank Stewart, who was an elderly gentleman who explained that he expected a tax break based on transferring what would have been capital gains from the sale of his home into this investment. But in any event, Your Honor, the court doesn't need to get there because, to take a step back, the district court properly considered the Section 3553A factors and drew a reasonable inference from the undisputed facts that there were vulnerable victims here. Judge Furman did exactly what one would hope the district court would do. He considered those factors in light of the specific nature of this offense and he drew a reasonable inference that there was some degree of harm in the nature of the victims and also non... But if we can read the record as suggesting that he was influenced by the fact that he thought that the defendant knew, then aren't we bound to decide whether that fact was valid or not under Judge Walker's previous opinion? And if we decide that it was not, aren't we bound to go back and ask Judge Furman, are you doing it regardless of whether there was knowledge or are you doing it in part influenced by knowledge? It's not necessary, Judge Calabresi, for this court to conduct that inquiry and it would not make sense to do so here. First of all, bear in mind this is arising in the context of the judge's balancing of the Section 3553A factors. This court has made clear that it's within the sound discretion of the district court to apply those factors in the way that it sees fit. This was what Judge Furman was essentially doing here as he was making a determination that relates to the harm that was created by the offense. He was also making an inference during an inference, was he not, that the defendant could have reasonably anticipated a vulnerability. Not that he actually knew, but that he could have reasonably anticipated it and therefore might in effect, and this would also be encompassed within this idea, that he deliberately . . . he didn't care. I mean, he deliberately closed his eyes to that aspect of it. Yes, and that was a fair inference for the district court to draw from the facts here. It arises simply from the nature of the investment itself. The defendant set up a fixed income investment, which any . . . as a fair inference, any person in Cabot's position would have known would be an investment that elderly people . . . Would appeal to. Correct. For two reasons. One, to take advantage of the fixed income, and second, to take advantage of the tax rate. This was an argument that the government made below. It was. And not controverted. That's correct. These are undisputed inferences that were drawn from undisputed facts. And what about the amount of harm here, the loss? Could you address that point? Yes, Judge. Above the $17 million? Yes, Judge Walker. This argument about a $300 million figure is simply a sideshow. Judge, the district court properly found that the loss amount was $17 million. That was his finding. He found it was a conservative and defensible loss amount. He properly considered that there was some degree of loss  And the most significant . . . You're saying that doesn't have to be quantified. Correct. And the most significant, Judge Walker, was emotional and psychological harm, which was totally undisputed below. And, of course, the guidelines themselves in Application Note 20 to 2B1.1 recognize that those forms of non-monetary harm can actually be the basis for an upward departure. In this case, it was well within the district court's discretion to consider that non-monetary harm under Section 3553A. Without having to get into whether the non-monetary harm was caused by the defendant or by the harm that all of us felt in that period of time. That's correct, Judge Walker. But even focusing on the non-monetary harm, Judge, it's important to consider the nature of the harm here. The defendant stole, he misappropriated money that was supposed to be used for the operating expenses of the business. So by misappropriating that, he necessarily precipitated the downfall of the business. So in that sense, the inferences . . . There was some discussion, was there not, of the fact that there could have . . . There was an absence of . . . These victims were deprived of the ability to mitigate the loss that was generally occurring because of this money being taken away. Yes, and I think that also turns on another fact here, which is the financial statements. The defendant manipulated financial statements that he disseminated to investors, so he misled them and prevented them from discovering his fraud. So in that sense, and as laid out in victim impact statements, which were not contested, the defendant caused harm in ways that were not quantifiable. That was a way of keeping them in the program. That's correct. And it's his way to continue the misappropriation for a substantial period of time. I want to return a moment to the vulnerability. Is your argument, then, that the district court did what it did on the ground . . . Where it looks as if it is talking about actual knowledge, the district court was actually saying this is something that he could have known had he bothered, and that that fact is not a fact that is counter to the facts that were found, and so does not run into the problem of our earlier cases? I think that's correct. I want to make sure I understand your question, Judge Calabresi. I want to just also take a step back here and say the district court's sentence didn't hinge on a finding that the defendant knew that his victims were vulnerable. It hinged . . . The district court properly considered under Section 3553A that there were some vulnerable victims. There were some vulnerable victims and that he would have known that there would be if he had bothered. That's the addition that Judge Walker made, and that's what I'm asking. Is that what you are saying, or is it just Judge Walker who is saying it? I want to just be clear on this. The district court's sentence, I don't think, hinged on a finding that the defendant knew or would have known that victims were vulnerable. It hinged on his conclusion that there were vulnerable victims, full stop. The district court did make the observation that the defendant would have known that there were some vulnerable victims. It certainly was a proper inference to be drawn from the record in this case. Based on the nature of the investment and the tax break, these were facts that were never disputed below, and the inference itself was never disputed by the defendant. There's certainly no plain error here. Judge Calabresi, I'd like to address just the vulnerable victim. There's no other way to read the record to say that the district court relied on the fact of Cabot's knowledge. It wasn't he would have known, he should have known. At A105, I certainly think he knew. That's what he relied on. Now, there's a reason why Congress, directed courts to write a written statement of reasons. Had the district court wrote a statement of reasons, maybe there would be no argument, and we wouldn't have to speculate what it means. But based on the, he didn't. That's not a finding that he knew. You would agree with that? I certainly think he, it's not saying I certainly think that he should have known. There's facts that prove that he knew. It's saying I think, I certainly think he knew. And I think it's . . . That's the judge's rumination. It's more than a rumination, Your Honor, because he's using that to give the defendant 24 months of sentence. I hope that we're just not basing a sentence on ruminations. It's very clear he said, you know, the government before, this is not about whether the enhancement for vulnerable applies. Everybody agreed, the parties agreed, that there should be no enhancement for that. The judge went back and said, yes, I agree that there should be no enhancement because maybe they are vulnerable. But my point is, and the reason why I'm going to enhance this sentence is because I certainly think he knew, given the nature of the investment. Now, as you wrote in Juha, and the government says, oh, this is a matter of discretion, there are distinct . . . That's a totally different thing. I certainly think he knew because of the nature of the investment. The judge could have said, you know, the nature of the investment would cause any reasonable person to understand that this investment would appeal to vulnerable people. If you put it that way, would that be any different from what you've just said? If that's the basis for the determination, I think it would be just as much a problem because the point is, the facts is, and the government really could point to nothing to say otherwise, is that the nature of this investment was not something that Cabot should have known that these were investments. Yes, it may have been a fixed income investment, but it was a particular type, and it may be that the victims misunderstood the tax implications of it, but it's very . . . And it's important to point out, Cabot was not the one that was marketed. These were brokers that were marketed. They market by private placement memorandum, by large brokerage firms. That's the allegation in plain. It's not Cabot that's doing it. Now, maybe there were sharp practices in the marketers who convinced these people, oh, you're going to be able to benefit from this. But from Cabot's knowledge, Cabot knows the type of investment. He has a private placement memorandum, it's an accredited investor, and there's no question the whole nature of this investment came about because of a tax ruling regarding 1031 exchanges. It doesn't apply to a person's residence, and the fact that a victim wrote a letter and said, I thought I was going to get this benefit because I sold my personal residence, that's not something that Cabot should have known and should have been saddled with. I see I ran out, but just if I can make one point, this issue about non-monetary harm. If $200 million loss or $250 million of the losses were caused by the financial downturn, obviously people were going to suffer non-monetary harms from that, but that's not something that Cabot should be saddled with. And if the loss was anything more than the $17 million, yes, there were non-monetary harms that resulted from that loss, the question before this Court. The investment was designed to hedge against the kind of losses that were caused by the financial downturn. I'm sorry. What if the investment was thought of by the investor as a hedge against the kind of loss that occurred in the financial downturn, which was a market collapse of that sort, as opposed to a high-risk, aggressive stock investment? I don't know that it would matter. The question goes back to the facts. Did Cabot's conduct cause these monetary harms? Yes. Again, wouldn't it be appropriate in a situation like this to say that it's your party's responsibility to show what part that there was loss causation or, I'm sorry, that there wasn't loss causation because of the whole market fall? If he did something that in the ordinary course of things would cause severe non-financial losses, which I think he did, isn't it up to him to say that these severe non-financial losses would have occurred, costs would have occurred anyway because of the market? It may be the case if coming into sentencing the defendant was told, listen, there are all these losses here and I'm considering whether the other $283 million was caused by you and whether those monetary losses were caused by you, and therefore I want you to prove that it wasn't. Maybe then it would be appropriate, but that's not what happened here. Coming into sentencing, what the government's position in its sentencing memorandum was, there's one loss here, the $17 million to the extent that the probation referred to $300 million. We have no way of knowing. At that point, doesn't the fact of plain error, which I agree is rarely that important in sentencing, but here wouldn't it have been exactly what would have happened if an objection had been made and then the district court would have said, oh, I understand your objection. Please, here is why I think it is appropriate. You tell me why not. But I think and I understand about plain error. I mean, normally plain error isn't that important at sentence because there isn't sandbagging, but in this situation, it's just one where it might be. Your Honor, I think in this case, I'm not accusing the government of sandbagging. Oh, no, no. It's never a matter of whether it is in the actual case, but whether it is a situation where it would be possible. But considering from the defense counsel's perspective going into sentence, he has the government's position and the court's repeatedly during sentence that we can't determine a loss of greater than $17 million. I think at that point, it's to place on the defendant the burden, oh, you should have then objected when the court in considering the 3553A factors then sort of went on to this loss. I think it's just too much. And particularly when everybody, the consistent position of all the parties was we don't know. It's impossible to determine. Thank you, Your Honor. Thank you both. Well argued. That concludes the argued cases on the calendar, so I'll ask the clerk to adjourn. Court is adjourned.